# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MICHAEL B. BYNOE,

    Plaintiff

v.

JANET YELLEN, et. al.,

    Defendants

Case No.: 3:21-cv-00509-MMD-WGC

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Re: ECF Nos. 1, 1-1

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1). Plaintiff has also filed a motion for appointment of counsel. (ECF No. 1-3.)

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of  the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $0.14 and his average monthly deposits were $0.

Plaintiff's application to proceed IFP should be granted. Plaintiff should not be required to pay an initial partial filing fee; however, whenever his prison account exceeds $10, he must

make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. SCREENING

### A. Standard

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names as defendants Treasury Secretary Janet Yellen, Counsel to the Secretary Jacob Leibenluft, Assistant Secretary for Public Affairs Calvin Mitchell, lawyer Landon Monte Yost, and Attorney General Aaron Ford.

Plaintiff's complaint references an exhibit, which is a letter from the White House about the American Rescue Plan dated May 19, 2021, stating that a payment of $1,400 was issued to

1  Plaintiff. He was advised that if he had not received the payment within 7 days to check the

2  status by vising the IRS website or calling the IRS phone number. (ECF No. 1-1 at 15.)

3       On July 23, 2021, plaintiff filed a prison grievance asking the prison to call the IRS

4  number or visit the website to find his check's whereabouts. (ECF No. 1-1 at 16.) An improper

5  grievance memorandum was issued on July 30, 2021, stating that Plaintiff is not permitted to

6  grieve the Nevada Department of Corrections (NDOC) for issues between Plaintiff and the IRS.

7  (ECF No. 1-1 at 17.)

8       Plaintiff states that he then received "more procrastination," referring to his exhibit B.3,

9  which is a page from a letter from the IRS dated September 21, 2021, stating that an income tax

10  return was received for year 2020, but to protect from identify theft, Plaintiff needed to call to

11  verify his identity. (ECF No. 1-1 at 3.)

12       Plaintiff states "this is the only pro se suit over no refund checks received by me a non-

13  party plaintiff class action member." (*Id.*).

14       In Claim 1, Plaintiff asserts a claim "to conspire legally or illegally Exhibit 2.2/to

15  procrastinate as a routine practice Rule 406 of Federal Rule of Evidence Exhibit 1.2." (*Id.* at 4.)

16  Plaintiff states that there has been a routine practice violation of Federal Rule of Evidence 406

17  because care was not taken in sending stimulus checks to Plaintiff. He states there was a

18  conspiracy to procrastinate and references "IIED," presumably referring to the tort of intentional

19  infliction of emotional distress. (*Id.* at 4.)

20       In Claim 2, Plaintiff references 26 U.S.C. § 6428(f)(3)(A)(i). He again states there was a

21  lack of reasonable care, fraud or bad faith in performance, which appears to relay to the payment

22  of the stimulus funds. He again references IIED, stating that he goes through paranoid periods

23

thinking that he is being denied benefits. He goes on to state: "This is a politically motivated case. Case in point, IRS telephone number 800 829-1954 is the same as my birthday." (*Id*. at 5.)

In Claim 3, Plaintiff references §12132 discrimination. He alleges that the State used the scheme of procrastination to deny him the benefits. He states that he makes a prior showing of mental illness, and avers that fear of being excluded from benefits of stimulus checks makes his mind go awry. He then states that if the instrumentality is functioning as the alter ego of the state, it will be treated as the state. (*Id*. at 6.)

Preliminarily, it is unclear if Plaintiff is asserting that he never received the stimulus payment, or he is complaining that the payment was just delayed.

The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), codified in part at 26 U.S.C. § 6428, was implemented to address a variety of issues related to the onset of the Covid-19 pandemic. Among other things, it established a tax credit for eligible individuals in the amount of $1,200 ($2,400 for filing a joint return), plus $500 multiplied by the number of qualifying children. 26 U.S.C. § 6428(a). The credits are referred to as Economic Impact Payments (EIPs).

On May 6, 2020, the IRS published responses to "Frequently Asked Questions" (FAQ) on the IRS.gov website, where the IRS said that an incarcerated person did not qualify for the EIP: "A payment made to someone who is incarcerated should be returned to the IRS by following the instructions about repayments…." *Scholl v. Mnuchin*, 489 F.Supp.3d 1008, 1022 (N.D. Cal. Sept. 24, 2020) (citation omitted). On June 18, 2020, the IRS updated its internal procedures manual to reflect this policy statement. *Id*. A June 30, 2020, treasury report noted that some of the millions of payments issued under the CARES Act had been sent to incarcerated individuals. *Id*. IRS gave taxpayer identification numbers for incarcerated persons to the Bureau

of Fiscal Service and asked that they be removed from subsequent payments. *Id*. The IRS issued

guidance that those who received the payments should repay the advance to the IRS or void the

check. *Id*. at 1023. The IRS also directed state corrections officials to intercept payments made to

incarcerated individuals and return them to the IRS. *Id*.

A class action lawsuit was filed in the Northern District of California that sought to

enjoin the policy of excluding incarcerated individuals from receiving EIPs based on their

incarcerated status alone. *Scholl*, 489 F.Supp.3d at 1023.

The Northern District of California's Chief Judge, Phyllis J. Hamilton, determined that

the IRS violated the Administrative Procedures Act (APA) when it made a final decision to not

provide EIPs to incarcerated individuals. *Scholl v. Mnuchin*, 494 F.Supp.3d 661 (N.D. Cal.

Oct. 14, 2020). Chief Judge Hamilton also concluded that there was a waiver of sovereign

immunity under the APA. In *Scholl*, Chief Judge Hamilton entered the following declaratory

relief: "[T]itle 26 U.S.C. § 6428 does not authorize defendants to withhold advance refunds or

credits from class members solely because they are or were incarcerated [and] … the defendants'

policy that persons who are or were incarcerated at any time in 2020 were ineligible for advance

refunds under the Act is both arbitrary and capricious and not in accordance with law." *Scholl*,

494 F.Supp.3d at 692. The policy was vacated and a permanent injunction was entered enjoining

the defendants from withholding benefits under 26 U.S.C. § 6428 from any class member on the

sole basis of their incarcerated status. *Id*. at 692-93. Chief Judge Hamilton directed the IRS to

reconsider payments to those who are entitled based on information available in the IRS'

records, "from whom benefits have thus far been withheld, intercepted, or returned on the sole

basis of their incarcerated status." *Id*. at 693. The court took no position as to whether the class

members were in fact owed the payments. *Id*. at 691. Instead, it was "incumbent on the IRS, as

the agency charged by Congress, to make individual determinations whether an individual is an 'eligible individual' and meets the various criteria delineated in the Act." *Id*.

As a result of this injunction, the IRS changed its policy, stating that it cannot deny a payment for the first EIP to someone who is incarcerated if they meet the other criteria. *See https://www.irs.gov/newsroom/questions-and-answers-about-the-first-economic-impact-payment-topic-a-eligibility*, last visited January 5, 2022. If the individual was not required to file a federal income tax return for 2018 or 2019 and could not be claimed as a dependent on someone else's tax return, for either of those years, the person had until November 4, 2020, to mail the 2019 simplified paper return in order to get the first EIP. That deadline has now passed. *Id*.

Congress authorized a second round of EIPs in a supplemental appropriations act, effective December 27, 2020, in the amount of $600 for individuals, and $1,200 for those filing a joint return, and $600 for each qualifying child. 26 U.S.C. § 6428A. For the second EIP, the IRS states that an individual cannot be denied the EIP solely because the person is incarcerated. Incarcerated individuals may have been issued a payment if all eligibility requirements were met and the individual filed a 2019 tax return that was processed by the IRS. https://www.irs.gov/coronavirus/second-eip-faqs#Eligibility, last visited January 5, 2022.

The American Rescue Plan Act was signed into law in 2021, which authorized a third EIP in the amount of $1,400 to eligible individuals ($2,800 for filing a joint return), plus $1,400 for each dependent. 26 U.S.C. § 6428B. The IRS started processing these payments in March of 2021, and will continue to process them throughout 2021. https://www.irs.gov/newsroom/questions-and-answers-about-the-third-economic-impact-payment, last visited January 5, 2022. Again, individuals will not be denied the third EIP solely

because they are incarcerated. *See* https://www.irs.gov/newsroom/questions-and-answers-about-the-third-economic-impact-payment-topic-b-eligibility-and-calculation-of-the-third-payment, last visited January 5, 2022. If the person filed the 2020 tax return, no further action is needed. If the person does not have a filing requirement for 2020 and the person filled out a 2019 tax return, or used the non-filers tool on IRS.gov last year or are a federal benefit recipient and does not have a spouse or qualifying dependents that are new in 2020, no further action need be taken. All others must file a 2020 tax return. https://www.irs.gov/newsroom/questions-and-answers-about-the-third-economic-impact-payment-topic-a-general-information, last visited January 5, 2022.

Finally, those who did not get the first two rounds of EIPs, or got less than the full amounts, may be eligible to claim those funds under the 2020 Recovery Rebate Credit. To do so, the person must file a 2020 tax return, even if not required to file. *See* https://www.irs.gov/newsroom/recovery-rebate-credit, last visited January 5, 2022. Incarcerated individuals will not be denied the Recovery Rebate Credit solely because they are incarcerated. *See https://www.irs.gov/newsroom/recovery-rebate-credit-topic-b-eligibility*, last visited January 5, 2022.

In cases after *Scholl* where inmates have sought court intervention in obtaining EIPs pursuant to the CARES Act, Chief District Judge Hamilton has held that to the extent the plaintiff claimed he was denied his EIP due to his incarcerated status, he is already a member of the *Scholl* class, and is not entitled to separate relief. *See e.g. Vaughn v. U.S. Dep't of Treasury*, 2021 WL 3373280, at *3 (N.D. Cal. Aug. 3, 2021). She also concluded that the plaintiff was not entitled to an order compelling the IRS to provide the EIPs pursuant to *Scholl* or the CARES Act because the court had not taken a position on whether individual incarcerated persons were

1  entitled to the EIP. *Id*. Furthermore, she found that funds could no longer be distributed under the

2  CARES Act since the deadline had passed for the issuance of such funds. *Id*.

3        Plaintiff's complaint only references the American Rescue Plan Act stimulus payment.

4  According to Plaintiff's own records attached to his complaint, he did file a 2020 tax return, but

5  the IRS just required he verify his identity before the return would be processed. Plaintiff

6  indicates that he filed a grievance asking the prison to contact the IRS regarding the stimulus

7  check, but it is unclear whether he contacted the IRS to verify his identity as requested.

8        In any event, it does not appear that a private cause of action can be maintained under the

9  legislation authorizing the disbursement of these funds. The laws do not indicate that there is a

10  private cause of action for non-receipt of funds. *See e.g. Comcast Corp. v. Nat. Ass'n of African*

11  *Am. Owned Media*, 140 S.Ct. 1009, 1015 (2020) (citation and quotation marks omitted) ("[W]e

12  have come to appreciate that, like substantive federal law itself, private rights of action to

13  enforce federal law must be created by Congress and raising up causes of action where a statute

14  has not created them may be a proper function for common-law courts, but not for federal

15  tribunals.")

16        Plaintiff's relief, it seems, is to make sure he has verified his identity with the IRS so that

17  his 2020 tax return can be processed and the refund check issued. If Plaintiff has further issues

18  with the payment of the funds, his recourse is to contact the IRS.

19        Insofar as Plaintiff references a conspiracy to procrastinate, there are no factual

20  allegations to support such a conspiracy claim. Plaintiff's claim simply appears to be that he has

21  not yet received his stimulus check.

22        Plaintiff references Federal Rule of Evidence 406, but that rule only provides that

23  "[e]vidence of a person's habit or an organization's routine practice *may be admitted to prove*

1  that on a particular occasion the person or organization acted in accordance with the habit or

2  routine practice." Fed. R. Evid. 406. That is to say, the rule provides that such *evidence* may be

3  admitted at *trial*. It is not he basis of a federal claim.

4          Insofar as Plaintiff references IIED, A plaintiff asserting an intentional infliction of

5  emotional distress claim in Nevada must demonstrate: "(1) extreme and outrageous conduct with

6  either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's

7  having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star*

8  *v. Rabello*, 625 P.2d 90, 92-93, 97 Nev. 124, 125 (1981) (citation omitted).

9          "[E]xtreme and outrageous conduct is that which is outside all possible bounds of

10  decency and is regarded as utterly intolerable in a civilized community. *Maduike v. Agency Rent-*

11  *A-Car*, 953 P.2d 24, 26, 114 Nev. 1, 4 (1998) (citation and quotation marks omitted). "[P]ersons

12  must necessarily be expected and required to be hardened … to occasional acts that are definitely

13  inconsiderate and unkind." *Id.* (citation and quotation marks omitted).

14          The denial or delay of a stimulus check does not rise to the level of "extreme and

15  outrageous conduct … outside all possible bounds of decency" so as to be "utterly intolerable in

16  a civilized community."

17          Finally, Plaintiff refers to discrimination under §12132, presumably referring to Title II

18  of the Americans with Disabilities Act, which includes 42 U.S.C. §§ 12131-12165. That section

19  provides that "no qualified individual with a disability shall, by reason of such disability, be

20  excluded from participation in or be denied the benefits of the services, programs, or activities of

21  a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

22          Plaintiff references exhibits to his complaint which demonstrate that he has mental health

23  diagnoses and received mental health treatment (ECF No. 1-1 at 26, 29) and he entered a plea of

guilty but mentally ill, which he sought to invalidate after Nevada reinstated the insanity plea in place of guilty but mentally ill (*id*. at 35). Importantly, there are no allegations of a connection between plaintiff's mental health and the alleged denial or delay of stimulus payments. Nor is it plausible there is such a connection since the payments were automatically to be made to all eligible Americans, and the IRS had stated that the payment at issue here specifically applied to incarcerated persons.

In sum, it is recommended that Plaintiff's complaint be dismissed. The dismissal should be with prejudice because it does not appear amendment could cure these deficiencies.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1). Plaintiff should not be required to pay an initial partial filing fee; however, whenever his prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk should be directed to **SEND** a copy of this Order to the attention of **Chief of Inmate Services for the Nevada Department of Corrections**, P.O. Box 7011, Carson City, Nevada 89702.

(2) The Clerk should be directed to **FILE** the complaint (ECF No. 1-1).

(3) The Complaint should be **DISMISSED WITH PREJUDICE.**

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 5, 2022

William G. Cobb
United States Magistrate Judge